**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Pat LEONARD, Johnny Bowline, Louis Butler, Curtis Hallum, Johnny Jones and Trish Leonard, Defendants-Appellants.**

Nos. 78–1716, 78–1717, 78–1718, 78–1719, 78–1720, and 78–1721.

United States Court of Appeals, Tenth Circuit.

Argued Jan. 23, 1979.

Decided March 8, 1979.

2. *Burks* was decided June 14, 1978. The order of dismissal in question was filed June 23, 1978.

Julian K. Fite, U. S. Atty., Muskogee, Okl., for plaintiff-appellee.

Robert D. McDonald, Fort Gibson, Okl., for defendant-appellant Pat Leonard.

Jerry L. McCombs, Idabel, Okl., for defendant-appellant Johnny Bowline.

J. W. Coyle, III, Oklahoma City, Okl., for defendant-appellant Louis Butler.

John E. Shipp, Idabel, Okl., for defendant-appellant Curtis Hallum.

Gene Stipe, Oklahoma City, Okl., for defendant-appellant Johnny Jones.

J. Ron Wright, Muskogee, Okl., for defendant-appellant Trish Leonard.

Before HOLLOWAY, BARRETT and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This is a companion case to *United States v. Bowline*, 593 F.2d 944 (10th Cir.). The United States of America, appellee, and Pat Leonard, Johnny Bowline, Louis Butler, Curtis Hallum, Johnny Jones and Trish Leonard, appellants, are the parties. In the companion case, the government appealed the trial court's order dismissing the conspiracy count of the indictment. The opinion of this court has affirmed the action taken by the trial court and has remanded the case for further proceedings.

The indictment, which is common to both of these cases, contained 15 substantive charges against various of the 36 original defendants. Twelve of these were tried in April 1978. Dismissals were granted as to two, three were found not guilty and seven were found guilty.

This trial started out with nine of the 36 defendants and ended with the trial court's grant of a mistrial because of the failure of the U. S. Attorney to comply with the Jencks Act, 18 U.S.C. § 3500. After the mistrial was granted, the court severed the conspiracy from the substantive counts and also severed the remaining substantive counts as to each defendant from the other. The mistrial was ordered on June 8, 1978. Six of the nine defendants are before us on appeal.

On July 5, 1978. the trial of the substantive counts of the indictment was called. At that time the several appellants moved to dismiss the indictment as to the substan-

tive counts. This was grounded on the proposition that the previous trial had placed all of them in jeopardy notwithstanding that they had sought the mistrial. The consent factor, it is contended, is offset by the overreaching on the part of the United States Attorney as a result of the failure by him to give over the Jencks Act material; that as a result, the appellants were denied the right of effective cross-examination. Also, at the time the mistrial was granted there had been several days of trial attended by great expense, difficulty and harassment.

The question for consideration is then, whether the failure of the government during the six days of trial to comply with the Act of Congress, 18 U.S.C. § 3500, and the trial court's orders, both of which required delivery of Jencks Act material to the appellants, constituted prejudicial misconduct by the U.S. Attorney of sufficient magnitude and consequence so as to preclude a second prosecution.

The defendants say that the record establishes that substantial prejudice flowed from the conduct of the U.S. Attorney in failing to furnish them with witness statements in accordance with the Jencks Act. They complain that the U.S. Attorney was guilty of various practices incident to the withholding of the witness statements; that on occasion he would furnish a statement to one of the attorneys and fail to furnish it to the others. On still other occasions he would fail to give any witness statements. In some instances he postponed the giving of the statements until after the witness had departed. At other times he furnished statements in which he had deleted portions. This latter was revealed to have been information that was irrelevant to the defendants on trial. After discussion, the U.S. Attorney furnished complete copies and the court ruled that the deletions were proper.

The trial court's order had been specific in its requirement that the district attorney deliver witness statements to defense attorneys immediately after direct examination. The mistrial order contains the court's lengthy comments on the persistent failure of the district attorney to comply with its order and with the Jencks Act. This opinion, given from the bench, is transcribed in Volume IX of the record and is appended to this opinion.

The trial judge's ruling declared that there had been prejudice to the defendants as a result of the conduct of the United States Attorney, but that he was reluctant to declare a mistrial. The judge attributed this misconduct not to bad faith but, rather, to the fact that the U.S. Attorney was new in the office and was unfamiliar with all of the rules of criminal procedure, including 18 U.S.C. § 3500, the Jencks Act. The court also noted "that the Government was grudgingly furnishing discovery materials, and I so expressed it in one of my orders." The court attributed the U.S. Attorney's failure to his not being "informed about the law." The court said that the case was not a simple one and that the U.S. Attorney may not have realized its full magnitude, but the court said the law was clear in requiring that statements and reports be furnished to defense counsel at the conclusion of the testimony of the government agent, and that Rule 16 required that the evidentiary materials mentioned therein be provided to counsel.

■ If the trial court's finding of lack of bad faith is supported by the evidence, that is, of course, the end of the matter. Jeopardy does not take effect and retrial is not barred. But even if bad faith is held to be present, it does not in and of itself carry the day—in the absence of a legal consequence.

Ordinarily where defendants *move* for a mistrial they thereby elect to terminate the right to continue the present trial. Impliedly they elect to face a retrial. There is one exception to this general rule.

■ The standards of the Supreme Court for deciding applicability of the mentioned exception which bars a retrial following the granting of a defendant's motion for mistrial question whether actions of the trial court or of the United States Attorney have provoked a motion by the defendant for the

mistrial. The result is that generally retrial is the rule. The only exception is where the court's or the United States Attorney's behavior was for the purpose of bringing about a motion for mistrial by the defendant's counsel.

The Supreme Court does not appear to have considered the question which is before us, but from what has been handed down it is to be gleaned that the conduct of the United States Attorney, which is necessary to bar a retrial, must have been purposeful or intentional or must have been reckless conduct which rises to the level of purposefulness and must have sought to provoke a mistrial motion from defendants.

The Supreme Court has ruled that retrial is barred where the conduct was undertaken to harass or prejudice the defendant (and cause a mistrial at defendants' behest). *Lee v. United States*, 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977), and *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). It is to be inferred from the authorities, in addition, that retrial is likely to be barred where the prosecutor's conduct has resulted in a belief by him that acquittal is likely in any event. *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). *See also United States v. Tateo*, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964).

The conclusion which we derive from the cases as to the general rule is that one who moves for a mistrial thereby consents to the termination of the present trial and waives his right to be tried by that jury and at the same time consents, however, to being retried. There is an exception that applies where the prosecutor or court acts for the purpose of bringing forth from defendants a mistrial motion. We can see no indication that the Supreme Court has contemplated that there shall be any expansion of the exception. The rule and the exception are discussed in the opinion of Mr. Justice Stewart in *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976), as follows:

The Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions. It bars retrials where "bad-faith conduct by judge or prosecutor," *United States v. Jorn, supra,* at [400 U.S.] 485, [91 S.Ct., at 557] threatens the "[h]arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict" the defendant. *Downum v. United States,* 372 U.S. [734], at 736 [83 S.Ct. 1033, at 1034, 10 L.Ed.2d 100 at 102]. See *Gori v. United States,* 367 U.S. [364], at 369 [81 S.Ct. 1523, at 1526, 6 L.Ed.2d 901, 905]; *United States v. Jorn, supra,* [400 U.S.] at 489, [91 S.Ct. at 559, 27 L.Ed.2d at 558] (Stewart, J., dissenting); cf. *Wade v. Hunter,* 336 U.S. [684], at 692 [69 S.Ct. 834, at 838, 93 L.Ed. 974].

But here the trial judge's banishment of Wagner from the proceedings was not done in bad faith in order to goad the respondent into requesting a mistrial or to prejudice his prospects for an acquittal.

424 U.S., at 611, 96 S.Ct., at 1081.

█ Despite the trial court's finding that the U.S. Attorney's actions in this case did not constitute bad faith, our reading of *Dinitz* and the other cases convinces us that bad faith in the abstract does not help the defendant in any event. It must be bad faith, the impact of which provokes a mistrial request. We cannot say that that was present in this case. True, it was conduct unbecoming a U.S. Attorney who is presumed to be aware of the law and should abide by it. At the same time, the trial court did not take action which would likely have insured the delivery of the documents in question. Clearly the trial court is not, however, guilty of misconduct and there is a lack of evidence that provoking a mistrial request was the motive in any case.

The decisions of this court have recognized the limited nature of the exception. *United States v. Nelson,* 582 F.2d 1246 (10th Cir. 1978); *United States v. Davis,* 578 F.2d 277 (10th Cir. 1978); *United States v. Buz-*

*zard,* 540 F.2d 1383 (10th Cir. 1976). *Cf. United States v. Martin,* 561 F.2d 135 (8th Cir. 1977); *United States v. Kessler,* 530 F.2d 1246 (5th Cir. 1976).

On retrial the court will, of course, be prepared to *enforce* the demands of Rule 16 and 18 U.S.C. § 3500, and will be ready as well to compel the uncovering of the *Brady* material.

The order and judgment of the district court denying the plea in bar and requiring retrial should be and the same is hereby affirmed.

## APPENDIX

### THE OPINION OF JUDGE MORRIS GIVEN FROM THE BENCH

"THE COURT: The Jencks Act provides that after a witness called by the United States has testified on direct examination that the court shall, on motion of the defendant, order the United States to provide any statement which relates to the subject matter as to which the witness has testified. Now, some of you filed pretrial motions requesting Jencks Act material. The Court was of the view they were premature, and in part the Court reached that conclusion because in responses by the Government assurances were given that Jencks Act materials would be furnished at the conclusion of the testimony of the witness. The question then arises as to whether or not the reports that were made by these officers, and who were witnesses for the Government, constitutes statements within the meaning of the Jencks Act which ought to have been furnished to defense counsel at the conclusion of the testimony on direct of each such witness."

A discussion of the authorities followed.

"The question I have before me is whether or not the defendants have been prejudiced in the conduct of their trial, of their defenses in this case. There is no one any more reluctant than am I in view of the substantial amount of evidence that has been adduced in this case to, at this stage of the proceedings, declare a mistrial. And if in fairness to the defendants I thought in-structions could be given, or if I thought recalling those witnesses now after they have been excused and permitting cross examination again I would do it, but I have concluded that I cannot do it. I reached that conclusion reluctantly. If I read the law correctly, I think it is required. It is better to do it now than to go through further proceedings and then appeal and try the case all over again, if that should be the result.

"Now, in the Court's view it is highly regrettable and unfortunate that this trial error has occurred, but it has. The Court has been concerned, and the Court is not unappreciative of the fact that the United States attorney is new in office and not familiar with, and understandably so, not familiar with all of the Federal Rules of Criminal Procedure, or the Jencks Act, and other matters. The Court has had the view, and that comes also perhaps in part from the practice in State Court, the Court has had the view in connection with the ruling on Rule 16 matters, and some other matters that the Government was grudgingly furnishing discovery materials, and I so expressed it in one of my orders. I am not saying that Mr. Fite hasn't been in good faith. I am saying that he may not have been informed about the law. I am also saying that this is not a simple, ordinary, easy case. Thirty-seven defendants named in the indictment. When it was tried the first time it was the first case that Mr. Fite ever tried in Federal Court. It is a somewhat complex case. He may not have appreciated the full magnitude of it, and the requirement of furnishing these matters. The Court is not going further, I am not making any determination with respect to the other matters that have been submitted and tendered by the Government, by Mr. Fite, in his argument in opposition to these motions. I am not suggesting that the Government need go any further than that required in the Jencks Act. But the law on this subject with respect to the matters before me clearly require, in the Court's view, that these statements, these reports had to have been furnished to defense coun-

sel at the conclusion of the testimony of the Government agent. Now, it is equally appropriate if the Government concludes that contained in those reports are matters which do not relate, then, those can be tendered to the Court, and if the Court concludes that some of them can be deleted they can be so deleted. The Court can express the view—it is for the United States Attorney, for him to determine in his—the Court would express the view that my experience suggests that the Government's case is not hurt if they usually make these reports available to the other side. But, it is entirely within the prerogative of the United States attorney to take the position, if he wishes to do so, that some of the matters in the reports may appropriately be excluded and that can be done by tendering it to the Court. But in the cases that I have tried since I have been on the bench I have been of the view that tendering the report in toto, and in no instances that I have been able to perceive placed the Government at a disadvantage. That is for the Government to decide.

"Now, in view of the fact that I am declaring a mistrial in this case I want to say two or three other things, because I am concerned about the retrial. We have had a lot of controversy in this case concerning whether or not Rule 16 materials have been submitted. One of the principal reasons for the difficulty of the controversy is because the first count in this case is a conspiracy count. Some of the materials have been furnished to some of the defendants because they were the ones principally involved, but they weren't furnished to other defendants. And to avoid those matters, and prior to retrial, it is hoped that all Rule 16 materials will be made available to those defendants requesting same.

"The defendant Butler has taken the position that the absence of fingerprints on Exhibits 33 through 37, that the absence of fingerprints of the defendant Butler is a matter that Butler ought to have been informed about under Brady. And the Government indeed has a continuing obligation to furnish Brady materials. The Court doesn't know—it has been represented to the Court that there wasn't any report showing an absence of fingerprint materials, but it has been stated in court by the United States attorney that he has been informed that there were no fingerprint materials, no fingerprints of the defendant Butler. The report by Agent Koonce, which has been submitted to the Court for examination, does reveal that the report concerning the fingerprints had not at the time that the report had been written been returned showing anything about fingerprints one way or the other.

"Now, there is one other matter that the Court intends to address. The defendants have all moved, they have either moved for severance, or moved for dismissal, or moved for mistrial because the Court has refused to grant severance because they charge that there are multiple conspiracies in this case. The Court would like to inquire with respect to two of the defendants whether or not with respect to the additional evidence which you intend to adduce, Mr. Fite, you have any additional evidence with respect to the defendant Andrews.

"MR. FITE: A confession, Your Honor, of the defendant Andrews, Antonio Garcia Andrews."