**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Harold W. BROOKS, D. O., Defendant-Appellant.**

**No. 79–1282.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted May 18, 1979.

Decided June 5, 1979.

---

David N. Williams, Asst. U. S. Atty., Albuquerque, N. M. (R. E. Thompson, U. S. Atty., Albuquerque, N. M., on the brief), for plaintiff-appellee.

Thomas A. Tabet, Albuquerque, N. M. (Steven C. Henry, Albuquerque, N. M., on the brief), for defendant-appellant.

Before McWILLIAMS, DOYLE and LOGAN, Circuit Judges.

McWILLIAMS, Circuit Judge.

This appeal involves a claim of double jeopardy. Harold W. Brooks, D.O., was charged in a fourteen count indictment with violations of the Controlled Substances Act, 21 U.S.C. § 841(a)(1). Brooks' trial ended in a mistrial. Prior to being retried, Brooks moved to dismiss the indictment on the ground that to bring him to trial a second time would violate his Fifth Amendment rights. That motion was denied, and Brooks filed a notice of appeal under the authority of *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).

A brief statement of the facts and circumstances leading up to the mistrial will bring this matter into focus. The Government's case was based on alleged distributions of controlled substances by Dr. Brooks to certain Government informants. The conversations between the informants and Dr. Brooks were recorded through the use of a Nagra tape recorder placed in the purse of one of the informants.

After the indictment was returned against Dr. Brooks, and before trial, agents of the Drug Enforcement Administration learned of threats that had been made against the informants, and they were also advised that Brooks and his attorney, one Sigmund Bloom, were allegedly willing to pay money to the informants if the latter would either alter their testimony or disappear. The DEA determined to investigate the matter, and as a part of that investigation sent two of the informants to Bloom's law offices, one of the informants having the Nagra tape recorder in her purse. At the meeting, however, Bloom rejected, out-of-hand, the suggestion by the informants that either he, or Brooks, would pay for altered testimony. Bloom did not know, of course, that his conversation with the informants was being recorded, and it is this fact which later triggered the present controversy.

At trial, Ida Martinez, one of the informants, was being cross-examined by Bloom. In response to questioning, Ida Martinez confirmed that all of her conversations with Dr. Brooks were recorded, and she volunteered that her conversation with Bloom in the latter's law office was also recorded. It was at this juncture that the jury was excused, and after extensive argument and considerable testimony concerning the events leading up to the recorded conversation between the informants and attorney Bloom, the trial court declared a mistrial. The trial court's action was in response to Bloom's motion for a mistrial, which motion was personally approved by the defendant, Dr. Brooks. The Government resisted the

mistrial request, contending that its investigation of Bloom relating to obstruction of justice was collateral to Brook's trial. As indicated, the trial court granted defense counsel's motion and declared a mistrial "in order to protect the defendant's rights."

In granting the mistrial, the trial court stated that notwithstanding the fact that the Government did not view its investigation of Bloom, the attorney, as part of its investigative file on Dr. Brooks, the Government nevertheless should have revealed, prior to trial, that it had a tape recording of the conversation between the informants and attorney Bloom. Such, reasoned the trial court, could be of use in cross-examination and possible impeachment of the informants. At the same time the trial court was also somewhat critical of attorney Bloom, who, of course, knew of the subject matter of his conversation with the informants, and of the offer that had been made and rejected. The only fact of which Bloom was not aware was that his conversation with the informants had been recorded. It was in this setting that the trial court, on motion of the defendant, declared a mistrial.

■ The general rule is that where a defendant moves for a mistrial, and his request is granted, he thereby consents to a retrial and cannot successfully invoke the Double Jeopardy Clause of the Fifth Amendment. See, for example, *United States v. Leonard,* 593 F.2d 951, 954 (10th Cir. 1979). A narrow exception to that general rule occurs when prosecutorial or judicial bad faith prejudicially provokes a defendant into requesting a mistrial. In the instant case, there simply was no prosecutorial action which was designed to pressure Bloom into asking for a mistrial.

· *United States v. Leonard, supra,* has particular pertinency to the present case. There we held that a retrial was not barred by the Double Jeopardy Clause where the first trial had ended in a mistrial on motion of the defendants because of the prosecutor's failure to deliver Jencks Act material which could have been used in cross-examination of Government witnesses. In thus holding, we fully reviewed the controlling authorities, and commented as follows:

> The conclusion which we derive from the cases as to the general rule is that one who moves for a mistrial thereby consents to the termination of the present trial and waives his right to be tried by that jury and at the same time consents, however, to being retried. There is an exception that applies where the prosecutor or court acts for the purpose of bringing forth from defendants a mistrial motion. We can see no indication that the Supreme Court has contemplated that there shall be any expansion of the exception. *Leonard* at 954.

■ Dr. Brooks relies primarily upon *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). We do not regard *Dinitz* as being supportive of defendant's position. In *Dinitz,* the Supreme Court held that a request by a defendant for a mistrial ordinarily removes any barrier to his reprosecution, even if the request is prompted by prosecutorial or judicial error. Under *Dinitz,* the only exception to the general rule is where bad faith conduct by the judge or prosecutor threatens harassment of an accused by successive prosecution so as to afford the prosecution a more favorable opportunity to convict.

In sum, we find no bad faith on the part of the prosecutor, nor were any of his actions designed to provoke a request for mistrial. Brooks elected to move for a mistrial. Brooks thereby waived his right to be tried by that jury, and at the same time consented to being retried.

Judgment affirmed, and case remanded for further proceedings.