UNITED STATES of America, Appellee,

v.

Harry J. ZOZLIO, Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

James T. LAWRENCE, Defendant, Appellant.

Nos. 79–1353, 79–1354.

United States Court of Appeals, First Circuit.

Argued Feb. 1, 1980.

Decided March 18, 1980.

Kirk Y. Griffin, Boston, Mass., with whom Leo J. Dailey, Nolan & Dailey, Coventry, R. I., John Tramonti, Jr., Providence, R. I., and Griffin & Higgins, Boston, Mass., were on brief, for appellants.

Thomas D. Yannucci, Atty., U. S. Dept. of Justice, Washington, D. C., with whom Drew S. Days, III, Asst. Atty. Gen. and Walter W. Barnett, Washington, D. C., were on brief, for appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Following a jury trial before the District Court for the District of Rhode Island, Harry Zozlio and James Lawrence, officers of the Coventry, Rhode Island Police Department, were convicted of violating 18 U.S.C. §§ 241 and 242 for their use of force, threats of injury, and other improper means in questioning an individual after his arrest.* Appellants' principal contention is that their rights secured by the double jeopardy clause of the fifth amendment were violated when they faced retrial after having successfully urged that a mistrial be granted because of a government failure to comply strictly with pretrial discovery orders.

■ In these circumstances, where appellants themselves have pressed for a mistrial, the double jeopardy clause bars a new trial only if it can be said that the government's claimed error stemmed from bad faith, an effort to harass or prejudice, or an attempt to provoke a mistrial. *United States v. Scott*, 437 U.S. 82, 94, 98 S.Ct. 2187, 2195, 57 L.Ed.2d 65 (1978); *Lee v. United States*, 432 U.S. 23, 33–34, 97 S.Ct. 2141, 2147, 52 L.Ed.2d 80 (1977); *United States v. Dinitz*, 424 U.S. 600, 611, 96 S.Ct. 1075, 1081, 47 L.Ed.2d 267 (1976). *See also United States v. Llaca Orbiz*, 513 F.2d 816, 819 (1st Cir. 1975). Here the district court repeatedly and specifically found no such behavior on the part of the government. It noted in discussing the possibility of declaring a mistrial, "I want to make it abundantly clear that I am in no way laying fault here to anyone, just to the contrary, it is obvious from the record there was a genuine misinterpretation [as to the discovery requests]." And before the commencement of the second trial, when denying appellants' motion to dismiss on double jeopardy grounds, the court further stated:

"The government, however, never engaged in any intentional actions to provoke a mistrial. In its ruling declaring a mistrial, this Court explicitly found that the government had not purposefully circumvented the discovery order. The dispute leading to the mistrial was the result of two equally defensible interpretations of this Court's pre-trial discovery order. There is no evidence of bad faith on the government's part or any intent to provoke a motion for mistrial. . . . Reluctantly, I feel constrained to say that this motion to dismiss smacks of a ploy and constitutes an unacceptable tactical maneuver."

The court's findings as to the nature of the government's error are amply supported by the record, *see Moroyoqui v. United States*, 570 F.2d 862, 864 (9th Cir. 1977) (applying "clearly erroneous" standard), and thus provide a sufficient basis for our rejection of appellants' claims. *See United States v. Leonard*, 593 F.2d 951, 953 (10th Cir. 1979) ("If the trial court's finding of lack of bad faith is supported by the evidence, that is, of course, the end of the matter.").

■ Appellants concede the government cannot be deemed guilty of bad faith or affirmative overreaching. They ask, however, that we apply a test of gross negligence in determining whether prosecutorial error resulting in a successful defense motion for mistrial should trigger the double jeopardy clause and thus bar further proceedings. *See United States v. Kessler*, 530 F.2d 1246, 1256 (5th Cir. 1976). But even were we inclined to adopt such a test, which we need not now decide, it would be of no help to appellants. The district court's well-supported findings, particularly its conclusion that the government's error was the product of a "genuine" and "defensible" misinterpretation of the discovery orders, leave no room for an inference of gross negligence.

■ Appellants further argue that the district court erred in denying their motions for judgments of acquittal on the conspiracy count of the indictment, *see* 18 U.S.C.

---

* The arrestee was acquitted on one of the charges brought against him; the remaining charges were dismissed.

§ 241: We have carefully reviewed the record and find that the evidence, when viewed in the light most favorable to the government, together with all reasonable inferences to be drawn therefrom, *United States v. Indelicato*, 611 F.2d 376, 383 (1st Cir. 1979), is sufficient to sustain appellants' convictions. That evidence of conspiracy was largely circumstantial is immaterial. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *Dirring v. United States*, 328 F.2d 512, 515 (1st Cir. 1964).

Finally, appellant Lawrence faults the district court for its denial of his motion for severance. Lawrence suggests that he was undoubtedly prejudiced by the "spill-over" caused by an alleged disparity in the proof mustered against each of the separate defendants. While the evidence against Lawrence and Zozlio was not identical in every respect, the disparity was by no means of such a degree as to cause us to find the district court's refusal to sever an abuse of its broad discretion in this area. *Varela Cartagena v. United States*, 397 F.2d 278, 279 (1st Cir. 1968). In addition, we note the giving of limiting instructions by the court which reduced the danger of prejudice, if any. *See Woodcock v. Amaral*, 511 F.2d 985, 994 (1st Cir. 1974).

*Affirmed.*