**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Steve POLLACK and John Hudson Whitaker, Defendants-Appellants.**

Nos. 80–2173, 80–2184.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Jan. 26, 1981.

Decided Feb. 13, 1981.

Philard L. Rounds, Jr., Asst. U. S. Atty. (Hubert H. Bryant, U. S. Atty., with him on brief), N. D. Oklahoma, Tulsa, Okl., for plaintiff-appellee.

Randolph L. Schaffer, Jr., Houston, Tex. (Richard Haynes, Haynes & Fullenweider, P. L. C., Houston, Tex. and Patrick Williams, Tulsa, Okl., with him on brief), for defendant-appellant John Hudson Whitaker.

Thomas J. Nolan, Palo Alto, Cal., on brief, for defendant-appellant Steve Pollack.

Before McWILLIAMS, BREITENSTEIN and McKAY, Circuit Judges.

McWILLIAMS, Circuit Judge.

This appeal involves a claim of double jeopardy. The two appellants, Steve Pollack and John Hudson Whitaker, along with five other persons, were charged with conspiring to import cocaine into the United States in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and 963. In a second count, Whitaker and two other persons, but not Pollack, were charged with conspiring to possess cocaine with an intent to distribute, and with distributing the drug, in violation of 21 U.S.C. §§ 846 and 841(a)(1).

At the beginning of the trial, the Government asked the court to order that witnesses be excluded from the courtroom except when testifying. The request was granted, and the trial court, acting pursuant to Fed. R.Evid. 615, ordered all witnesses to leave the courtroom and not reappear until they were called to testify, excepting the two defendants, the family of one defendant, and a designated Government witness.

Two Government witnesses were officials of City Bank and Trust, Tulsa, Oklahoma, one, by the time of trial, actually being a former employee of the bank. It was the Government's theory that Whitaker had borrowed money from the bank to buy cocaine and that the circumstances surrounding the transaction were highly suspicious. Upon cross-examination of the former bank official, it became apparent that the two witnesses had discussed their testimony with each other.

As indicated, the trial court had in open court ordered all witnesses, with the exception above referred to, excluded from the courtroom. All witnesses, however, were not present when this order was made, and in this regard the prosecuting attorney and defense counsel under local rule were expected to themselves instruct witnesses not present when the exclusionary order was entered. A corollary of the exclusionary order was that the witnesses were not to discuss their testimony among themselves, be it before or after they testified.

When it became apparent that the two bank officials had violated the trial court's order by discussing their testimony, and, as one described it, "clearing up" any possible areas of conflict between the two, the trial court excused the jury and thereafter fully explored the matter. The two bank offi-

cials were questioned in detail as to the nature and extent of their private discussions. The trial court heard from both the prosecuting attorney and defense counsel. The prosecuting attorney stated that he had simply failed to advise one bank official of the trial court's exclusionary order, and that the other bank official had only been advised in very general terms some three weeks prior to the trial that he should not discuss the case with others. Based on what he heard, the trial judge concluded that there had been no bad faith on the part of the prosecuting attorney, only mere inadvertence. Defense counsel specifically agreed that the prosecuting attorney had not been guilty of any willful misconduct, and indicated general agreement with the trial court's conclusion that, at the most, this was a case of inadvertence.

At this juncture the trial court was concerned with what to do about the entire matter. There were several court recesses to permit counsel to make at least a hurried search of the authorities in an effort to come up with some practical solution to the problem. Initially, there was no suggestion of declaring a mistrial. In fact, defense counsel first moved to simply strike the testimony of the two bank officials. In addition to that possible solution, the trial court mentioned the possibility of citing the bank officials for contempt, which suggestion was rejected. The trial court also suggested that the testimony be allowed to stand, and the jury then advised that the witnesses had violated the court's exclusionary order. Such, it was thought, would permit the jury to then consider whether the violation of the exclusionary order detracted from the credibility which the two witnesses might otherwise have enjoyed.

After much colloquy between court and counsel, defense counsel first brought up the subject of declaring a mistrial. After the defendants formally moved for a mistrial, there was a further recess to allow counsel to research whether a mistrial would create jeopardy problems.

Although in our disposition of this appeal we are not relying on waiver, nevertheless it would appear that defense counsel led the trial judge to believe that, if he granted a mistrial, the defendants would not later assert a claim of former jeopardy. One of defense counsel stated to the trial judge that, if a mistrial were granted, "no defendant could be heard later to urge that the mistrial constituted a final resolution of the issues . . ." The trial judge volunteered it was his understanding that, when a defendant moves for a mistrial, he cannot later assert former jeopardy. Defense counsel indicated agreement with the trial court's understanding of the matter, and stated that "he [the defendant] can't gripe about it later." Indeed, defense counsel indicated that, once the present jury was discharged, they were prepared to immediately impanel a new jury and proceed with the trial. In this setting the trial court declared a mistrial and discharged the jury.

The case came on again for trial ten days later. In the interim, however, defense counsel had a change of heart. On the morning the retrial was to commence, each of these two defendants filed a motion to dismiss based on a plea of former jeopardy. Notwithstanding the fact that defense counsel had previously agreed with the trial court's conclusion that the prosecutor was not guilty of willful misconduct and that the failure to instruct the two witnesses resulted from mere inadvertence, defense counsel advised the trial court that further research had indicated that the mistrial did indeed preclude a retrial of the case.

It was the position of defense counsel that, notwithstanding their earlier agreement that the prosecutor was *not* guilty of any willful misconduct, and that the problem arose because of mere inadvertence, they now were of the view that the prosecutor was in fact guilty of gross negligence in failing to instruct his witnesses not to discuss the case among themselves. Further, they sought to reopen the entire matter. In declining to reopen the matter, the trial judge held that the facts and circumstances leading to the mistrial had been fully explored at the earlier hearing and he then denied in the defendants' motion to

dismiss based on former jeopardy. In so doing, the trial court, in practical effect, held the defendants, and their counsel, to their earlier admission in open court that the prosecutor was not guilty of willful misconduct, and that the mistrial was caused by mere inadvertence on the part of the prosecutor. Under *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), the defendants now appeal the order of the trial court denying their motion to dismiss based on former jeopardy. Under the circumstances above described, we conclude that the trial court did not err in denying the defendants' motion to dismiss. We therefore affirm.

■ The general rule is that when a defendant in a criminal proceeding moves for a mistrial, he thereby consents to a retrial and cannot successfully invoke the double jeopardy clause of the Fifth Amendment. A narrow exception to the general rule occurs when prosecutorial or judicial bad faith provokes a defendant into requesting the mistrial. See, for example, *United States v. Brooks*, 599 F.2d 943 (10th Cir. 1979). See also, *United States v. Leonard*, 593 F.2d 951 (10th Cir. 1979), where the controlling Supreme Court decisions are reviewed.

■ *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976), cited by defendants, held that a request by a defendant for a mistrial ordinarily removes any barrier to reprosecution, even if the request for a mistrial is precipitated by prosecutorial or judicial error. Under *Dinitz*, the only exception to the rule is when bad-faith conduct by the prosecutor, or the judge, prods the defendant into requesting a mistrial, thereby opening the door to successive and harassive prosecutions. As above indicated, there is nothing in the record to indicate bad-faith conduct on the part of the prosecutor, only prosecutorial error at the most. Under the authorities above cited, when a defendant successfully moves for a mistrial because of inadvertent, non-intentional error by the prosecutor, the double jeopardy clause does not preclude retrial.

As indicated, in the present case the defendants would escape the general rule by contending that, although the prosecutor's conduct may not have been willful, he was nonetheless guilty of gross negligence, and that where such conduct provokes a motion for a mistrial by a defendant, which is granted, the defendant may thereafter successfully invoke the double jeopardy clause should the prosecution attempt to retry him. We need not here decide whether gross negligence on the part of a prosecutor can form the basis for a claim of prosecutorial overreaching and harassment. It is sufficient here to simply note that in the instant case the trial court not only found that the prosecutor was *not* guilty of willful misconduct, but also found that he was only guilty of mere inadvertence. A finding of mere inadvertence, which is fully supported by the record, negates a suggestion of gross negligence.

As above mentioned, at the hearing on the motion to dismiss, defense counsel sought to reopen the entire matter to permit the introduction of evidence tending to show prosecutorial gross negligence. The trial court denied this request, and, on appeal, counsel contends that at the very least the case should be remanded for another evidentiary hearing into the matter. We disagree. The matter was, in our view, fully explored once. Counsel at the earlier hearing agreed that the prosecutor was guilty of *no* willful misconduct. To permit defense counsel to now reopen the matter and attempt to show prosecutorial gross negligence would in practical effect permit counsel to repudiate their prior admission that the prosecutor was not guilty of willful misconduct. Gross negligence and willful misconduct, though perhaps not synonymous, are closely akin. And, as indicated, the trial court's finding of "mere inadvertence" rules out the suggestion of gross negligence. Under the circumstances, the trial court did not abuse its discretion in refusing to hold a second hearing on the matter.

Judgment affirmed.