UNITED STATES of America,
Plaintiff–Appellant,

v.

Gene P. DENNISON, Dana B. Wilker-
son, Jr., Thomas C. Herrmann,
Defendants–Appellees.

Nos. 88–2802, 88–2805 and 88–2806.

United States Court of Appeals,
Tenth Circuit.

Dec. 1, 1989.

Michael R. Lazerwitz (and Deborah Watson, Attys., Dept. of Justice, Washington, D.C., Roger Hilfiger, U.S. Atty., E.D. Okl., Muskogee, Okl., with him on the brief), for plaintiff-appellant.

Michael J. Fairchild, Tulsa, Okl., for Gene P. Dennison, defendant-appellee.

Julian K. Fite, Muskogee, Okl., for Dana B. Wilkerson, Jr., defendant-appellee.

Bruce Green of Green and Green, Muskogee, Okl. (Robert M. Butler, Tulsa, Okl., with him on the brief), for Thomas C. Herrmann, defendant-appellee.

Before BALDOCK, EBEL, and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

In a multi-count indictment Dan L. Stefanoff, Gene P. Dennison, Dana B. Wilkerson, Jr., and Thomas C. Herrmann were charged with conspiring to defraud Phoenix Federal Savings and Loan Association of Muskogee, Oklahoma, an institution which was insured by the Federal Savings and Loan Insurance Corporation, and with otherwise obtaining monies of the Phoenix Federal Savings and Loan Association by fraud, deceit and false representation. The gist of the several charges was that the defendants represented to Phoenix that they had acquired, or were about to acquire, property near Denver, Colorado for a purchase price of $4,000,000, and, in connection with such acquisition, defendants sought, and obtained, a loan from Phoenix in the amount of 80% of the represented purchase price ($3,200,000), whereas in fact they acquired the property in question for $2,150,000.

Stefanoff entered into a plea agreement with the United States whereby the United States agreed not to pursue other potential criminal matters against him in return for which Stefanoff agreed to plead guilty to charges of violating 18 U.S.C. §§ 371, 1014–1006 and to testify as a government witness in the trial of the remaining three

defendants, who had pled not guilty to all charges.

Prior to trial, the district court entered several discovery orders requiring government counsel to make available to defense counsel exculpatory evidence in their possession. Similar orders were also entered after trial commenced. After the government had called several witnesses, but long before it would have rested its case, the defendants moved to dismiss the indictment on the grounds that government counsel had failed to comply with the district court's several orders regarding discovery. The district court agreed with defense counsel, characterizing government counsel, *inter alia,* as being "green as a gourd," and dismissed the indictment in its entirety as to all three defendants. The government appeals the three dismissal orders. The three appeals, which were separately briefed and argued, were companioned, but not consolidated, in this court. We reverse.

The government appeals pursuant to 18 U.S.C. § 3731, which provides, in pertinent part, that in a criminal case the United States may appeal to a court of appeals from a judgment of a district court dismissing an indictment "except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution." The statute also provides that appeal in such cases shall be taken within thirty days after the judgment of dismissal has been entered and shall be "diligently prosecuted."

■ All three defendants filed motions to dismiss the government's appeal on the ground that the government has not "diligently prosecuted" its appeal in this court, and on the additional ground that the dou-

ble jeopardy clause prohibits any retrial. We are not persuaded.

The district court dismissed the indictment on October 12, 1988. The government filed its notice of appeal on November 10, 1988, within the thirty-day period prescribed by 18 U.S.C. § 3731. The trial transcript was filed in the district court on January 20, 1989, which triggered the setting of a briefing schedule wherein the government's opening brief was due by March 1, 1989. The government sought, and obtained from us, two 30–day extensions of time within which to file its opening brief, which was filed on April 28, 1989. Two of the three motions to dismiss were filed on May 26, 1989, and the other was filed on June 2, 1989. The government's response to the motion to dismiss was filed on June 16, 1989.

The filing of a motion to dismiss an appeal by the appellees tolled the filing of their briefs. By order of August 18, 1989, the appellees were ordered to file their briefs by September 8, 1989, even though the motions to dismiss the appeal were still pending. Herrmann filed his brief on September 7, 1989, and Wilkerson and Dennison filed separate briefs on September 8, 1989. The government filed a reply brief on September 15, 1989. The case was orally argued before the court on September 27, 1989.

The appellees concede that there is no "definite time limit" to determine whether the government has "diligently prosecuted" an appeal under 18 U.S.C. § 3731.[1] Appellees' "lack of diligence" argument is largely premised on the fact that the government obtained from us two extensions totalling sixty days within which to file its opening brief. We are not prepared to hold that such proves a lack of diligence

1. In this regard, the defendants cite *United States v. Jenkins,* 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975) and *United States v. Goldstein,* 479 F.2d 1061 (2d Cir.1973). In *Jenkins,* the government's brief was not filed until six and one-half months after the notice of appeal. However, the Supreme Court in *Jenkins* noted that the defendant had not urged in either the Court of Appeals or the Supreme Court that there was a failure by the government to diligently prosecute its appeal. In *Goldstein,* the

government did not file its opening brief until six weeks after its notice of appeal. The Second Circuit in *Goldstein* in a footnote stated that, for appeals brought under 18 U.S.C. § 3731, 30 days from the notice of appeal is the appropriate time limit within which the government should file its opening brief. However, the Second Circuit in *Goldstein* did not reach the issue of whether the government had diligently prosecuted its appeal and decided the appeal on a different ground.

on the part of the government. Some delay occurred while the motions to dismiss were pending in this court. Such, however, is not attributable to the government. All things considered, we believe the matter has been diligently pursued by all concerned in this court.

 Nor are we persuaded that there is merit to appellees' double jeopardy argument. The general rule is that where a defendant in a criminal proceeding moves in mid-trial for a mistrial or dismissal on a basis unrelated to factual guilt or innocence of the offense of which he is accused (in our case on the basis of prosecutorial misconduct consisting of non-compliance with discovery orders) and his request is granted, he suffers no injury cognizable under the Double Jeopardy Clause if the government is permitted to appeal from such ruling in favor of the defendant. *United States v. Scott*, 437 U.S. 82, 98–99, 98 S.Ct. 2187, 2197–98, 57 L.Ed.2d 65, 78–79 (1978).

A narrow exception to the general rule occurs where the defendant is pressured or goaded into seeking a mistrial or dismissal because of prosecutorial misconduct. As will be developed later, prosecutorial misconduct in the instant case was apparently the result of inexperience, and possibly carelessness, on the part of trial counsel for the government and was not a calculated move by government counsel to provoke defendants into requesting dismissal. In support of the foregoing, *see United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *United States v. Poe*, 713 F.2d 579 (10th Cir.1983); *United States v. Martinez*, 667 F.2d 886 (10th Cir.1981); and *United States v. Brooks*, 599 F.2d 943 (10th Cir.1979). In *Dinitz*, the Supreme Court spoke as follows:

> The Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions. It bars retrials where "bad faith conduct by judge or prosecutor," *United States v. Jorn, supra* [400 U.S. 470], at 485 [91 S.Ct. 547,

at 557, 27 L.Ed.2d 543 (1971) ], threatens the "[h]arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict" the defendant (citations omitted).

For the reasons above stated, appellees' motions to dismiss will be denied.

 As indicated, after trial commenced and several government witnesses had testified, the district court granted the defendants' renewed motions to dismiss the indictment because of the failure of the prosecutor to comply with the several discovery orders of the district court requiring the prosecutor to give to defense counsel any evidence in his custody or under his control which might tend to impeach a government witness or might otherwise tend to exculpate the defendants. In so doing, the district court commented, *inter alia*, that the government's failure to comply had been "wholesale and ongoing" and in "bad faith," and that anything less than an outright dismissal, as opposed to a mistrial, would "penalize" the defendants for being here and being ready for trial.

The government's basic position is that although it did not fully and promptly comply with all discovery orders, such violations of discovery orders did not warrant the extreme sanction of dismissal of the indictment. Appellees' basic position is that the prosecutor's repeated violations of the district court's order were so egregious that dismissal of the indictment was proper. We are in accord with the government's analysis of the matter.

At the outset, the district court's characterization of the prosecutor's conduct as being the result of "bad faith" is simply not borne out by the record before us—inexperience on the part of the prosecutor, and perhaps carelessness, but not bad faith. Indeed, at one point in the proceeding the district court inquired of the prosecutor, who was apparently handling the case by himself, as to how many trials in federal court he had participated in, and the prosecutor's answer that this was only his second trial was the basis for the district court's characterization of counsel as

being "green as a gourd." We find nothing in the record to support the district court's finding that the prosecutor acted in "bad faith."

Fed.R.Crim.P. 16(d)(2) provides as follows:

> **(2) Failure to comply with a Request.** If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances. The court may specify the time, place and manner of making the discovery and inspection and may prescribe such terms and conditions as are just.

In *United States v. Peveto*, 881 F.2d 844 (10th Cir.1989), the district judge, who coincidentally is the same judge who presided in the instant case, determined that the government had failed to provide defense counsel with important evidence until the day trial commenced, in clear violation of discovery orders, and, as a sanction, granted the defendant a two weeks continuance. In so doing, the district judge rejected the suggestion that the evidence be excluded, as is permitted by Fed.R.Crim.P. 16(d)(2). The district judge in *Peveto* also rejected the suggestion that the indictment be dismissed because of the government's failure to comply with discovery orders, commenting that the interest of justice would not be "served well by dismissal of such a serious matter, because of some misdeeds by the government."

After the two weeks continuance, the jury in *Peveto* reconvened and the trial proceeded through to conclusion, with the defendants being found guilty. On appeal, the appellants argued that the district judge erred in not dismissing the indictment and imposing only a sanction of a two-week continuance. We upheld the sanction imposed by the district judge, stating that there was no abuse of discretion in refusing to impose the extreme sanction of dismissal. In so doing, we spoke as follows:

> The Federal Rules of Criminal Procedure give trial courts broad discretion in imposing sanctions on a party who fails to comply with a discovery order:
>
> > If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances. The court may specify the time, place and manner of making the discovery and inspection and may prescribe such terms and conditions as are just.
>
> Fed.R.Crim.Proc. 16(d)(2). *See United States Wicker*, 848 F.2d 1059, 1060 (10th Cir.1988); *United States v. Fernandez*, 780 F.2d 1573, 1576 (11th Cir.1986). The district court's exercise of discretion is governed by several factors:
>
> > When the government fails to comply with a discovery order, the factors the district court should consider in determining if a sanction is appropriate are (1) the reasons the government delayed producing the requested materials, including whether or not the government acted in bad faith when it failed to comply with the discovery order; (2) the extent of prejudice to the defendant as a result of the government's delay; and (3) the feasibility of curing the prejudice with a continuance. *United States v. Euceda–Hernandez*, 768 F.2d 1307, 1312 (11th Cir.1985); *Fernandez*, 780 F.2d at 1576.
>
> *Wicker*, 848 F.2d at 1061. If a sanction is imposed, it should be the "least severe sanction that will accomplish ... prompt and full compliance with the court's discovery orders." *Id.* at 1060 (quoting *Fernandez*, 780 F.2d at 1576). *Cf. Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988) (holding that as a general rule a district court exceeds its supervisory power in dismissing an indictment for

prosecutorial misconduct not prejudicial to the defendant and noting that many errors may be remedied by means other than dismissal). "A continuance may normally be the most desirable remedy for the government's failure to comply with a discovery order." *Wicker*, 848 F.2d at 1062.

Our study of the matter convinces us that the district court abused its discretion in dismissing the indictment because of the government's failure to comply with discovery orders. Under the circumstances, it should have opted for a lesser sanction. A duly returned grand jury indictment should not be dismissed for subsequent conduct of a government attorney of the type involved in the instant case. The reason for the government's failure to fully and promptly comply with the district court's discovery orders is attributable to counsel's relative inexperience. As indicated, there is nothing in the record to indicate bad faith. Nor has prejudice been shown. Defense counsel apparently knew about many, if not all, matters they were attempting to obtain from government counsel. And at the moment that the indictment was dismissed, it would appear that government counsel had substantially complied with all discovery orders.[2] Government counsel obviously vexed the district judge, but that fact does not justify outright dismissal of the indictment.

Our attention has not been directed to any Tenth Circuit case where we upheld a district court's dismissal of an indictment because of prosecutorial misconduct. For Tenth Circuit cases where we reversed a district court's dismissal of an indictment on the basis of prosecutorial misconduct, *see United States v. Kilpatrick*, 821 F.2d 1456 (10th Cir.1987) (*aff'd* 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228); *United States v. Anderson*, 778 F.2d 602 (10th Cir.1985); *United States v. Drake*, 655 F.2d 1025 (10th Cir.1981).

Nor has our attention been directed to any Tenth Circuit case where we ever reviewed a dismissal of an indictment by a district court on the basis of a violation by government counsel of discovery orders. In *United States v. Jacobs*, 855 F.2d 652 (9th Cir.1988), the Ninth Circuit reversed a district court's dismissal of an indictment because of a violation by government counsel of discovery orders. In so doing, the Ninth Circuit said that dismissal of an indictment on the basis of prosecutorial misconduct is proper only if the misconduct is "flagrant" and causes "substantial prejudice" to the defendant. And in *United States v. Anderson, supra*, where the alleged prosecutorial misconduct did not involve discovery orders but involved the allegedly improper handling of the grand jury, we opined that instances where an appellate court has upheld a district court's dismissal of an indictment because of alleged prosecutorial misconduct are "few and far between."

The appellees' motions to dismiss are denied. The judgments dismissing the indictment are reversed and the matter remanded to the district court with direction that the indictment be reinstated in its entirety as to all appellees.

---

2. Prior to and during the trial, the government turned over considerable material to the defendants that would conceivably impeach the key government witness, including a number of FBI 302 reports (witness statements), records of other loans with which the key witness was involved, and a letter written to Phoenix from another member of the partnership who would later testify for the government. Defendants, on appeal, have not shown how they would have been prejudiced if required to continue with the trial after receiving the requested materials from the government.